**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ALEXANDRIA LOUIS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TARGET CORPORATION,<br><br>Defendant. | Case No. 7:26-cv-6768<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff ALEXANDRIA LOUIS ("Plaintiff"), individually and on behalf of all others similarly situated, by her attorneys, alleges the following upon information and belief, except for those allegations pertaining to Plaintiff, which are based on personal knowledge.

**NATURE OF THE ACTION**

1. This action seeks to remedy the deceptive and misleading business practices of Target Corporation (hereinafter "Target" or "Defendant") with respect to the manufacturing, marketing, and sale of Defendant's Up & Up branded Fragrance Free and Fresh Cucumber Scented baby wipes products throughout the United States (hereinafter the "Products").

2. Defendant has improperly, deceptively, and misleadingly labeled and marketed its Products to reasonable consumers, like Plaintiff, by omitting and not disclosing to consumers on its packaging that the Products are contaminated with Burkholderia cepacia complex ("B. cepacia" or "Bcc") and Burkholderia gladioli ("B. gladioli" or "Bgg").

3. Burkholderia cepacia complex is a group of bacteria that can be found in soil and water. Bcc bacteria are often resistant to common antibiotics, making it difficult to treat. Further,

1

those who are immunocompromised are at a higher risk of infection and experiencing symptoms such as fever and fatigue.[1]

4.      Burkholderia gladioli is an opportunistic pathogen that is similarly found in environmental reservoirs and can cause severe pneumonia and other infections in humans.[2]

5.      Use of products contaminated with B. cepacia and B. gladioli may result in serious and life-threatening infections, particularly for vulnerable populations.

6.      Per the FDA, Defendant's Products are predominantly used on newborns, infants, and young children, who are particularly vulnerable to opportunistic infection due to their immature immune systems.[3]

7.      In healthy individuals, use of the product on skin with minor lesions will more likely result in local infections. However, in immunocompromised individuals, newborns, infants, and young children, the infection is more likely to spread into the bloodstream, potentially leading to life-threatening sepsis or pneumonia.

8.      Plaintiff and those similarly situated (hereinafter "Class Members") reasonably expect that the baby wipes products they purchase will not contain, or risk containing, any knowingly harmful substances that cause severe disease and even be life threatening.

9.      Consumers trust retailers and manufacturers like Defendant to sell products that are safe, appropriately tested, and manufactured in accordance with the Current Good Manufacturing Practices (CGMP).

10.     Unfortunately for consumers, including Plaintiff, the Products they purchased contained, or were at risk of containing, B. cepacia and B. gladioli.

---

[1] https://www.cdc.gov/b-cepacia/about/index.html (last accessed Aug. 7, 2026)
[2] https://pmc.ncbi.nlm.nih.gov/articles/PMC9753951/ (last accessed Aug. 7, 2026)
[3] https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/target-recalls-fragrance-free-and-fresh-cucumber-scented-baby-wipes-due-potential-microbial (last accessed Aug. 7, 2026)

2

11.    Defendant utilized a marketing and advertising campaign that omitted from the packaging that the Products contained, or risked containing, dangerous bacteria.

12.    Knowing of the presence of B. cepacia and B. gladioli is highly material to reasonable consumers.

13.    The presence of these bacteria was a material fact solely within the possession of Defendant, and consumers could only obtain such information by sending the products off to a laboratory for extensive microbiological testing.

14.    Defendant's omission leads a reasonable consumer to believe they are not purchasing a product contaminated with bacteria such as B. cepacia and B. gladioli when, in fact, they are purchasing a product fraught with contamination risk.

15.    While Defendant issued a recall of the Products on June 4, 2026 (the "Recall")[4], this Recall has been woefully ineffective and insufficient to make consumers whole.

16.    The Recall instructs consumers who purchased the Products to stop using them immediately and dispose of them or return them.

17.    However, the Recall is purposely designed to prevent consumers from getting a full refund for the contaminated and recalled Products, as most consumers discard such consumable products and do not retain receipts.

18.    Defendant's own Recall and testing protocols confirmed and demonstrated the presence of the dangerous bacteria in the Products.

19.    Because Defendant has failed to adequately compensate Plaintiff and Class Members, this class action remedy is superior to Defendant's failed recall in every conceivable fashion.

---

[4] https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/target-recalls-fragrance-free-and-fresh-cucumber-scented-baby-wipes-due-potential-microbial (last accessed Aug. 7, 2026)

## JURISDICTION AND VENUE

20.    This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2)(A), because at least one member of the Class is a citizen of a different state than at least one Defendant.

21.    Further, this is a class action involving more than 100 class members, and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs.

22.    This Court has personal jurisdiction over Defendant because Defendant is authorized to do business and conducts substantial business in the State of New York.

23.    Defendant actively contracts to supply goods within the State of New York, supplies goods within the State of New York, and operates numerous retail locations within this District.

24.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendant transacts substantial business within this District, and a substantial part of the events or omissions giving rise to the Classes' claims occurred in this District.

## PARTIES

**Plaintiff**

25.    Plaintiff Alexandria Louis is, and at all times relevant to this action was, a citizen and resident of Machesney Park, Illinois.

26.    On May 15, 2026, Plaintiff Louis purchased the Defendant's Product, specifically the Target Up & Up wipes – Fragrance Free 72ct, for $1.79.

27.    Plaintiff Louis made this purchase in person at a Target retail store located at 9833 N Alpine Rd, Machesney Park, IL 61115.

28.    Plaintiff used the Products every day for their intended purpose until she received notice of the recall via social media.

29.    Prior to purchasing the Product, Plaintiff saw and reviewed the packaging and labeling of the Product.

30.    Nowhere on the packaging or labeling did Defendant disclose that the Product contained, or risked containing, B. cepacia and B. gladioli.

31.    Had Defendant disclosed this material information, Plaintiff Louis would not have been willing to purchase the Products at any price.

32.    Alternatively, Plaintiff Louis paid a price premium based on Defendant's false, misleading, and deceptive representations and omissions regarding the safety of the Products.

33.    The Products Plaintiff received were completely worthless because they were contaminated with, or carried a severe risk of contamination by, dangerous pathogens.

34.    Accordingly, Plaintiff was injured in fact and lost money as a direct and proximate result of Defendant's improper conduct.

**Defendant**

35.    Defendant Target Corporation is a Minnesota corporation with its principal place of business located at 1000 Nicollet Mall, Minneapolis, Minnesota, 55043.

36.    Target is a big-box general merchandise retailer of consumer goods, which includes baby products.

37.    Target sells national brand products as well as its own private label products.

38.    Target's baby wipes Products are sold under its private label known as "Up & Up."

39.    Up & Up is a registered trademark of Target Brands, Inc. and is marketed as an everyday essentials brand offering high-quality products.

5

40.    Defendant manufactures, markets, advertises, distributes, and sells the Up & Up Fragrance Free and Fresh Cucumber Scented baby wipes products.

41.    Defendant authorized the false, misleading, and deceptive marketing, advertising, distribution, and sale of its Products throughout the United States.

## FACTUAL BACKGROUND

42.    The baby product industry is a highly competitive, multi-billion-dollar market where safety and gentle ingredients are paramount to purchasing decisions.

43.    Consumers have become increasingly conscious and concerned about the safety of the products they use on their children.

44.    Companies, such as Defendant, have capitalized on consumers' desire for safe products, marketing their private label goods as safe alternatives to more expensive national brands.

45.    Consumers are willing to pay, and have paid, a premium for products that are represented to be safe for newborns, infants, and toddlers.

46.    Defendant markets its Products as "baby wipes" that are "soft and durable," "hypoallergenic," "pediatrician and dermatologist tested," "99% water formula," and "made with plant-derived ingredients."[5]

47.    The label of the Product expressly notes that the Product is safe and effective to be used as "baby wipes."[6]

48.    All of Defendant's baby wipes Products are manufactured in the same manner pursuant to Target's uniform contracts and specifications.

---

[5] https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/target-recalls-fragrance-free-and-fresh-cucumber-scented-baby-wipes-due-potential-microbial (last accessed Aug. 7, 2026)
[6] *Id.*

49.    Consumers lack the meaningful ability to test or independently ascertain or verify whether a product contains unsafe substances at the point of sale.

50.    Therefore, consumers must and do rely entirely on Defendant to truthfully and honestly report what the Products contain on the packaging.

51.    The Products' packaging wholly fails to identify B. cepacia and B. gladioli.

52.    In fact, B. cepacia and B. gladioli are not listed anywhere on the packaging, nor is there any warning about the inclusion, or potential inclusion, of these bacteria in the Products.

53.    Defendant is a massive and sophisticated corporation that has been in the business of producing, manufacturing, selling, and distributing baby wipes products for years.

54.    Defendant is in the unique and superior position of knowing the ingredients and raw materials used in the manufacturing of its Products.

55.    Defendant possesses unique and superior knowledge regarding the manufacturing processes, the facility conditions, and the risks associated with those processes.

56.    This superior knowledge includes the risk of Burkholderia contamination, as well as the ability and duty to test the Products for microbial contamination prior to releasing them into the stream of commerce.

57.    Such knowledge regarding quality assurance failures and contamination risks is solely within the possession of Defendant.

58.    Defendant had a duty to provide consumers, like Plaintiff and Class Members, with accurate information about the contents and safety of the Products.

59.    Instead of ensuring consumer safety, Defendant released contaminated Products into the consumer market.

60.     On June 4, 2026, Defendant issued a recall of certain lots of its Up & Up baby wipes Products due to microbial contamination.[7]

61.     The Recall covered products manufactured as far back as November 2025, meaning contaminated products were in the market and being actively used by consumers for months before any warning was issued.

62.     Consumers were instructed by Defendant to "immediately stop using the recalled products."[8]

63.     This instruction concedes that the baby wipes are unreasonably dangerous, unsafe, and unsuitable for their principal and intended purpose.

64.     The Recall provides that consumers with questions or refund requests should return the Products to a Target store.

65.     However, Defendant is acutely aware that the vast majority of consumers discard consumable baby wipes rapidly upon use and do not retain the original packaging or receipts.

66.     By waiting months to announce the recall and requiring physical returns or receipts, Defendant designed a recall program that structurally minimizes its own financial liability.

67.     Defendant's recall reaches a fraction of affected consumers and provides complete restitution to almost no one.

68.     Defendant's marketing and advertising campaign, which omits the presence of Burkholderia, is materially deceptive and misleading.

---

[7] https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/target-recalls-fragrance-free-and-fresh-cucumber-scented-baby-wipes-due-potential-microbial (Aug. 7, 2026)
[8] *Id.*

69.    Reasonable consumers reviewing Defendant's labels reasonably believe that they are purchasing products that are safe for use on an infant's most sensitive areas.

70.    Defendant's misrepresentations and omissions were intentional, as Defendant knows that parents will not purchase baby wipes contaminated with pneumonia-causing bacteria.

71.    As an immediate, direct, and proximate result of Defendant's false, misleading, and deceptive representations and omissions, Defendant injured Plaintiff and the Class Members.

72.    Plaintiff and the Class Members were deprived of the benefit of their bargain, as the Products they purchased had absolutely no value.

## CLASS ALLEGATIONS

73.    Plaintiff, individually and on behalf of all others similarly situated, brings this class action pursuant to Fed. R. Civ. P. 23.

74.    As detailed in this Complaint, Defendant orchestrated deceptive marketing, labeling, and manufacturing practices that uniformly impacted its customers.

75.    The proposed Class is defined as follows:

**Nationwide Class:** All persons within the United States who purchased Defendant's affected Products.

**Illinois Subclass:** All persons who purchased Defendant's affected Products within the State of Illinois.

76.    Excluded from the Classes are Defendant, any entity in which Defendant has a controlling interest, and Defendant's officers, directors, legal representatives, successors, and assigns.

77.    Plaintiff reserves the right to modify, change, or expand the definitions of the proposed Classes based upon discovery and further investigation.

9

78.     Numerosity: The proposed Class is so numerous that joinder of all members is impracticable. Plaintiff believes that there are hundreds of thousands of consumers who are Class Members as described above who have been damaged by Defendant's deceptive and misleading practices.

79.     Commonality: Questions of law and fact common to the Class Members predominate over any questions affecting only individual Class Members.

80.     Typicality: The claims or defenses of Plaintiff are typical of the claims or defenses of the Class. Class Members were injured and suffered damages in substantially the same manner as Plaintiff, Class Members have the same claims against Defendant relating to the same course of conduct, and Class Members are entitled to relief under the same legal theories asserted by Plaintiff.

81.     Adequacy: Plaintiff will fairly and adequately protect the interests of the proposed Class and has no interests antagonistic to those of the proposed Class. Plaintiff has retained counsel experienced in the prosecution of complex class actions.

82.     Predominance: Questions of law or fact common to proposed Class members predominate over any questions affecting only individual members. Common questions such as whether Defendant owed a duty to Plaintiff and the Class and whether Defendant breached its duties predominate over individual questions such as measurement of economic damages.

83.     Superiority: A class action is superior to other available methods for the fair and efficient adjudication of these claims because individual joinder of the claims of the Class is impracticable. Many members of the Class are without the financial resources necessary to pursue this matter. Even if some members of the Class could afford to litigate their claims separately, such a result would be unduly burdensome to the courts in which the individualized cases would

10

proceed. Individual litigation increases the time and expense of resolving a common dispute concerning Defendant's actions toward an entire group of individuals. Class action procedures allow for far fewer management difficulties in matters of this type and provide the unique benefits of unitary adjudication, economies of scale, and comprehensive supervision over the entire controversy by a single judge in a single court.

84.    Manageability: Plaintiff is unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act
(815 ILCS 505/1, et seq.)
(On behalf of Plaintiff and the Illinois Subclass)**

85.    Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

86.    The Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, et seq. ("ICFA"), prohibits "unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact."

87.    Defendant engaged in deceptive and unfair business practices by representing that its Products were safe, high-quality baby wipes, while omitting the material fact that the Products contained, or risked containing, B. cepacia and B. gladioli.

88.    Defendant intended that Plaintiff and the Illinois Subclass rely on its deceptive packaging and material omissions so they would purchase the Products.

11

89.     The omissions regarding the bacterial contamination risk were material to Plaintiff and the Illinois Subclass because reasonable consumers care deeply about the safety of products used on infants.

90.     Defendant's deceptive and unfair practices occurred in the course of conduct involving trade or commerce in Illinois.

91.     As a direct and proximate result of Defendant's violation of the ICFA, Plaintiff and the Illinois Subclass suffered actual damages in the form of monies paid for worthless, dangerous products.

92.     Plaintiff and the Illinois Subclass are entitled to monetary damages, punitive damages, and attorneys' fees and costs under the ICFA.

## SECOND CAUSE OF ACTION
### Negligence
### (On Behalf of Plaintiff and the Nationwide Class)

93.     Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

94.     Defendant owed a duty to Plaintiff and the Nationwide Class to exercise reasonable care in the manufacturing, quality control, distribution, and sale of the Products.

95.     Defendant breached this duty by failing to adhere to cGMP, failing to properly sanitize manufacturing equipment, and failing to adequately test raw materials and finished Products for microbial contamination.

96.     Defendant further breached its duty of care by negligently failing to timely or adequately warn Plaintiff and the Class of the Burkholderia contamination after Defendant knew, or should have known, of the defect.

12

97.    As a direct and proximate result of Defendant's negligence, Plaintiff and the Nationwide Class Members suffered economic injuries by paying for defective products they otherwise would not have purchased.

## THIRD CAUSE OF ACTION
### Unjust Enrichment
### (On Behalf of Plaintiff and the Nationwide Class)

98.    Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

99.    Plaintiff pleads this claim in the alternative.

100.    Defendant was unjustly enriched at the expense of Plaintiff and other Class Members through the payment of the purchase price for the Products.

101.    Defendant received a measurable benefit from Plaintiff and the Class Members, which Defendant retained despite the Products being defective, dangerous, and worthless.

102.    It would be inequitable and unjust for Defendant to retain these ill-gotten profits under the circumstances.

103.    Plaintiff and Class Members seek restitution, disgorgement of inequitably obtained monies, and the imposition of a constructive trust upon Defendant's unjust profits.

## FOURTH CAUSE OF ACTION
### Breach of Express Warranty
### (On behalf of Plaintiff and the Nationwide Class)

104.    Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

105.    Defendant, as the designer, manufacturer, marketer, and seller, expressly warranted on the Products' packaging that the Products were "baby wipes" that were "hypoallergenic," "pediatrician and dermatologist tested," and safe for use.

13

106.    These express representations became part of the basis of the bargain between Plaintiff, Class Members, and Defendant.

107.    Defendant breached these express warranties because the Products were contaminated with B. cepacia and B. gladioli, making them entirely unfit and unsafe for their intended purpose.

108.    The June 2026 recall acts as an admission by Defendant that the Products do not conform to the express warranties made on the labels.

109.    As a direct and proximate result of Defendant's breach of express warranty, Plaintiff and the Class Members suffered damages.

## FIFTH CAUSE OF ACTION
### Breach of Implied Warranty of Merchantability
### (On behalf of Plaintiff and the Nationwide Class)

110.    Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

111.    The sale of Defendant's Products created an implied warranty of merchantability pursuant to U.C.C. § 2-314.9

112.    Defendant is a merchant with respect to goods of this kind.

---

[9] All fifty States, the District of Columbia, and Puerto Rico have codified and adopted U.C.C. § 2-314: Ala. Code § 7-2-314; Alaska Stat. § 45.02.314; Ariz. Rev. Stat. Ann. § 47-2314; Ark. Code. Ann. § 4-2-314; Cal. Com. Code § 2314; Colo. Rev. Stat. § 4-2-314; Conn. Gen. Stat. Ann. § 42a-2-314; 6 Del. Code. § 2-314; D.C. Code. § 28:2-314; Fla. Stat. Ann. § 672.314; Ga. Code. Ann. § 11-2-314; Haw. Rev. Stat. § 490:2-314; Idaho Code § 28-2-314; 810 Ill. Comp. Stat. Ann. 5/2-314; Kan. Stat. Ann. § 84-2-314; Ky. Rev. Stat. Ann. § 355.2-314; La. Civ. Code Art. 2520; 11 Me. Rev. Stat. Ann. § 2-314; Md. Code. Ann. § 2-314; Mass. Gen. Law Ch. 106 § 2-314; Mich. Comp. Laws Ann. § 440.2314; Minn. Stat. Ann. § 336.2-314; Miss. Code Ann. § 75-2-314; Mo. Rev. Stat. § 400.2-314; Mont. Code Ann. § 30-2-314; Nev. Rev. Stat. U.C.C. § 104.2314; N.H. Rev. Ann. § 382-A:2-314; N.J. Stat. Ann. § 12A:2-314; N.M. Stat. Ann. § 55-2-314; N.Y. U.C.C. Law § 2-314; N.C. Gen. Stat. Ann. § 25-2-314; N.D. Stat. § 41-02-314; Ohio Rev. Code Ann. § 1302.27; Okla. Stat. tit. 12A § 2-314; Or. Rev. Stat. § 72.3140; 13 Pa. C.S. § 2314; P.R. Laws. Ann. Tit. 31, § 3841, et seq.; R.I. Gen. Laws § 6A-2-314; S.C. Code Ann. § 36-2-314; S.D. Stat. § 57A-2-314; Tenn. Code Ann. § 47-2-314; Tex. Bus. & Com. Code Ann. § 2-314; Utah Code Ann. § 70A-2-314; Va. Code § 8.2-314; Vt. Stat. Ann. 9A § 2-314; W. Va. Code § 46-2-314; Wash. Rev. Code § 62A 2-314; Wis. Stat. Ann. § 402.314; and Wyo. Stat. § 34.1-2-314.

113. By placing the Products into the stream of commerce, Defendant impliedly warranted that the Products were merchantable, meaning they were fit for their ordinary purpose of cleaning infants and toddlers safely.

114. Defendant breached the implied warranty of merchantability because the Products were heavily contaminated with dangerous pathogens, rendering them wholly unfit for human use.

115. As a proximate result of Defendant's breach of the implied warranty of merchantability, Plaintiff and the Class Members have sustained economic damages.

116. Plaintiff and the Class Members were deprived of the benefit of their bargain and spent money on Products they otherwise would not have purchased.

## PRAYER FOR RELIEF

WHEREFORE, the following relief is requested:

a. An order certifying this action as a class action pursuant to Fed. R. Civ. P. 23.

b. An award of statutory, compensatory, incidental, consequential, and punitive damages and restitution to the extent permitted by law in an amount to be proven at trial.

c. An order enjoining Defendant's unlawful conduct.

d. An award of attorneys' fees, expert witness fees, costs, and Class representative incentive awards as provided by applicable law.

e. An award of interest as provided by law, including pre-judgment and post-judgment interest.

f. Such other and further relief as this Court may deem just, equitable, or proper.

Dated: Aug. 6, 2026
Mineola, New York

**LEEDS BROWN LAW, P.C.**

/s/ Brett R. Cohen
Brett R. Cohen, Esq.

Jeffrey K. Brown, Esq.
134 Mineola Blvd – 2nd Floor
Mineola, NY 11501
bcohen@leedsbrownlaw.com
jbrown@leedsbrownlaw.com
Tel: (516) 873-9550

*Counsel for Plaintiff and Proposed Class*